IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 7, 2019

**JEFFREY MASON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-18-130     Roy B. Morgan, Jr., Judge**

_____

**No. W2018-01922-CCA-R3-PC**
_____

The petitioner, Jeffrey Mason, appeals the denial of his petition for post-conviction relief, which petition challenged his 2017 guilty-pleaded conviction of second degree murder, alleging that he was deprived of the effective assistance of counsel.  Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, and D. KELLY THOMAS, JR., JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Jeffrey Mason.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Jody Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arose from an incident in which the victim, Kheirra Murphy, was killed after being run over and dragged underneath a vehicle.  The facts as stated at the plea submission hearing were as follows:

> [O]n January 3rd of 2016 . . . , Kheirra Murphy was at a nightclub located . . . close to the intersection of Royal Street and North Parkway.  There's video [showing] . . . her and also the [petitioner] there at that nightclub and them also leaving together at approximately 3[:00 a.m.].  It also shows them actually getting in the car, a very distinctive 1993 Grand

Marquis with faded paint . . . [that was] gray, light blue[,] or white.

. . . [T]he responding officers . . . received a call at approximately 4:10 a.m. to the area of 100 Boardwalk Cove . . . . [T]hey found a person to be Kheirra Murphy suffering from multiple injuries. There was an autopsy performed, and the cause of death will be multiple blunt force injuries. She had multiple fractures. She was found naked from the waist down.

. . . [T]here was a blood trail leading up to the driveway to where ultimately her body was found indicating that she was drug underneath a car. There was also video obtained . . . which depicted Kheirra Murphy being walked across the front of the Family Dollar by a person we now know to be the [petitioner], and she was later found approximately seven minutes later. . . . She was found dead.

The car was later found at . . . Gillman Lane which is located behind the Exxon at Campbell and Highland, a set of apartments there. The car had the license plate removed, and also found underneath the car was blood leading from the front bumper, the length of the car. . . . DNA testing later revealed that blood to be that of Kheirra Murphy.

When the [petitioner] was arrested, he gave multiple conflicting stories about what he did that night culminating in one where he indicated that in his mind, the victim tried to rob him and that he ran her down. He described that as motive.

The petitioner pleaded guilty to second degree murder and tampering with evidence, and, pursuant to a plea agreement, the State dismissed a charge of first degree murder, and the trial court imposed an effective sentence of 35 years' incarceration.

The petitioner filed a timely pro se petition for post-conviction relief, alleging that his guilty plea was entered involuntarily and unknowingly, that the assistance of his counsel was ineffective, and that the indictment was fatally defective. Specifically, the petitioner alleged that trial counsel performed deficiently by failing to

provide the petitioner with discovery, failing to communicate with the petitioner, failing to adequately prepare for trial, permitting the petitioner to enter a guilty plea without reviewing the evidence, and failing to file the pre-trial motions the petitioner requested.

At the August 23, 2018 evidentiary hearing, the petitioner testified that he met with trial counsel before the plea submission hearing, but he could not remember whether he entered a guilty plea and did not know the length of his sentence. He stated that he did not receive certain discovery materials from trial counsel, including the autopsy report, photographs, audio recordings, and video recordings, but he did discuss those pieces of evidence with trial counsel. He also stated that he and trial counsel had discussed pre-trial motions but that trial counsel did not file any and that trial counsel did not discuss possible defenses with him. The petitioner contended that he wrote trial counsel a letter, but "he never responded back." The petitioner testified that he took daily medication for "bipolar and schizophrenia and something else," and that the prescribing doctor had warned him that the medications could "probably make [him] do some things that [he] probably don't want to do . . . like act out or just do different things." The petitioner could not recall whether he had undergone a mental evaluation prior to his pleading guilty. The petitioner explained that he pleaded guilty because trial counsel told him to "get it over with, just . . . say yes to [the judge], just say yes, agree, just say yes to everything."

During cross-examination, the petitioner testified that another inmate had read the pro se post-conviction petition to him, but he could not clearly answer whether he signed it himself or whether the other inmate had signed it for him. The petitioner was unable to provide clear answers to most of the State's questions. He stated that he could not remember the plea submission hearing, explaining, "I think I was on my meds." He also stated that he could not remember whether he had had conversations with trial counsel.

Trial counsel testified that he was the third attorney appointed to the petitioner's case before the plea submission hearing. He recalled receiving a plea offer from the State, which offer the petitioner ultimately accepted. He stated that he visited the petitioner "on multiple occasions," one time even taking his laptop to the jail to review discovery materials that included a video recording. He stated that he had filed a motion to request the services of an investigator but did not recall filing any other pre-trial motions. Trial counsel testified that, at the plea submission hearing, he believed the petitioner understood the proceeding, and he had reviewed the guilty plea with the petitioner prior to the hearing. He acknowledged that he did not discuss the petitioner's being on medication and could not recall whether he knew of any of the petitioner's mental health diagnoses, but he stated that the petitioner "was able to communicate," and

-3-

he believed that the petitioner "understood what he was doing." Trial counsel stated that, at some point prior to his appointment to the case, the petitioner underwent a mental health evaluation which "confirmed or corroborated" another evaluation completed "in the lower court." He acknowledged receiving letters from the petitioner and stated that he communicated with the petitioner, although he could not recall whether he had responded to each letter in writing.

On cross-examination, trial counsel testified that he reviewed all the discovery materials with the petitioner. He recalled that there was a video showing a man and woman getting into a car and leaving a nightclub in Jackson, which was consistent with the petitioner's statement and the car that was recovered in this case. He stated that the petitioner had acknowledged driving the car on the night of the victim's death and that the victim's DNA was recovered from the car. He contended that, in his opinion, there was no basis for the suppression of the video. He acknowledged that the petitioner had made several statements during the investigation of this case, including saying that he ran over the victim when she attempted to rob him. Trial counsel believed that the plea offer in this case was favorable to the petitioner "[u]nder the circumstances" because the petitioner was facing a minimum life sentence if convicted of first degree murder. Trial counsel testified that he was fully prepared to go to trial in this case and that he had investigated the case, reviewed all discovery materials, and interviewed potential witnesses. He also stated that he had discussed the case "[i]n detail" with the petitioner. He testified that the petitioner made the decision to plead guilty. Trial counsel reiterated that he believed that the petitioner "appeared to know exactly what he was doing" when he pleaded guilty. He explained that the plea submission hearing occurred on the date the case was scheduled for trial and that he was prepared for a trial on that day.

At the close of evidence, the post-conviction court accredited trial counsel's testimony over that of the petitioner and denied post-conviction relief. Specifically, the court found, among other things, that the petitioner failed to raise any mental health issues in his post-conviction petition and that the petitioner had previously undergone two mental health evaluations, neither of which suggested that he was not competent to stand trial. The court found no merit to the petitioner's claim that his guilty plea was not knowing on the ground that he was not informed of the evidence against him, finding that trial counsel reviewed all discovery materials with the petitioner before the plea submission hearing. The post-conviction court noted that, although trial counsel was the third attorney appointed to the petitioner's case, all of the petitioner's claims of ineffective assistance of counsel were against trial counsel only. The court concluded that the petitioner failed to carry his burden of proving his ineffective assistance of counsel claim, finding that trial counsel was prepared to go to trial, had reviewed all

-4-

discovery materials with the petitioner, had interviewed potential witnesses, and had discussed the State's plea offer with him.

In this untimely appeal, the petitioner argues that the post-conviction court erred by denying post-conviction relief, asserting that he was deprived of the effective assistance of counsel by trial counsel's failing to review discovery materials and potential defenses with him and permitting him to enter a guilty plea while taking medication.

We first address the untimeliness of this appeal. A notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). The post-conviction court's order denying post-conviction relief was filed on August 27, 2018, and the petitioner's pro se notice of appeal bears a file stamped date of October 22, 2018 with a handwritten note of "Mailroom 10-18-18." We understand this note to indicate the date that the petitioner delivered the notice of appeal to the prison mailroom; however, this date is nevertheless outside the 30 day window. This court may, however, waive the timely filing requirement "in the interest of justice." *Id.* The record before us includes a letter from the petitioner accompanying his pro se notice of appeal stating that he was aware the filing "was beyond the 30 day limit" but explaining that his post-conviction counsel had refused to file the notice even after the petitioner had "instructed" him to do so. In the interest of justice, we will waive the untimely filing and review this appeal on the merits. *See id.*

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and

that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Here, the petitioner has failed to carry his burden to prove by clear and convincing evidence sufficient facts to support his claim that trial counsel's representation was deficient. Trial counsel's accredited testimony established that he thoroughly reviewed all discovery materials with the petitioner, communicated with the petitioner in preparation for trial, and discussed the guilty plea with the petitioner. The petitioner presented no evidence that his medications impaired his ability to understand his guilty plea, and trial counsel testified that he believed the petitioner understood the nature of the proceeding and "understood what he was doing." Thus, the petitioner has failed to show that trial counsel performed deficiently or that he was prejudiced by any of trial counsel's actions.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE